1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11  ROBERT BURGESS,                    )
                                       )
12                   Plaintiff,        )
                                       )      No.  CV-07-962-HU
13        v.                           )
                                       )
14  STATE OF OREGON, MULTNOMAH         )
    COUNTY, AMY WEHR, and KAREN        )      OPINION & ORDER
15  ROSS,                              )
                                       )
16                   Defendants.       )
    ───────────────────────────────────)

17

18  Kevin E. Lucey
    1412 American Bank Building
    621 S.W. Morrison Street
19  Portland, Oregon 97205

20        Attorney for Plaintiff

21  Hardy Myers
    ATTORNEY GENERAL
22  Dirk L. Pierson
    SENIOR ASSISTANT ATTORNEY GENERAL
23  Department of Justice
    1162 Court Street NE
24  Salem, Oregon 97301-4096

25        Attorneys for Defendants State of Oregon and Amy Wehr

26  / / /

27  / / /

28  / / /

1 - OPINION & ORDER

Agnes Sowle
MULTNOMAH COUNTY ATTORNEY
David N. Blankfeld
ASSISTANT COUNTY ATTORNEY
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214

    Attorneys for Defendants Multnomah County and Karen Ross

HUBEL, Magistrate Judge:

    Plaintiff Robert Burgess brings this action against the State of Oregon, Multnomah County, Oregon Department of Corrections (ODOC) employee Amy Wehr, and Multnomah County Sheriff's Office (MCSO) employee Karen Ross. Plaintiff contends that he was erroneously denied credit for time served while on work release in Multnomah County.

    The State defendants and the County defendants separately move for summary judgment. All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motions.

BACKGROUND

    Plaintiff was convicted in Multnomah County Circuit Court on October 10, 1994, for one count of Rape 1. He was sentenced to 228 months probation and 360 custody units at a work release center. On May 28, 2003, plaintiff's probation was revoked and he was sentenced to a fifty-month determinate term of incarceration. He was delivered to the custody of the ODOC on July 9, 2003, to begin service of this sentence.

    The MCSO originally certified that it held plaintiff in its custody for four separate time periods, all related to this conviction. The time periods as calculated by the MCSO on July 9, 2003, in its Statement of Imprisonment, were: (1) May 8, 2003, to

2 - OPINION & ORDER

July 9, 2003; (2) February 26, 1998, to March 25, 1998; (3) October 11, 1994, to July 21, 1995; and (4) February 4, 1994, to February 14, 1994, for a total credit of 390 days. The ODOC, after receiving an amended statement from the MCSO correcting mathematical errors, calculated the sentence in accordance with Oregon Revised Statute § (O.R.S.) 137.370, and credited plaintiff with 385 days.

Defendants contend that during a file review on November 12, 2005, the ODOC discovered that for part of the time calculated by the MCSO in July 2003, plaintiff was in a work-release center. Defendants assert that on November 16, 2005, the County confirmed that the time period of October 11, 1994, through July 21, 1995, consisted of "non jail units."

On November 16, 2005, the County issued an Amended Statement of Imprisonment, showing three periods of physical custody which were the same periods (1), (2), and (4) as listed above, and deleting period (3) above from October 11, 1994, through July 21, 1995. The total credit was now noted as 101 days. Defendant Ross signed the Amended Statement of Imprisonment. After receiving it, defendant Wehr adjusted plaintiff's time served credits to 101 days.

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with

3 - OPINION & ORDER

1   the affidavits, if any,' which it believes demonstrate the absence

2   of a genuine issue of material fact." Celotex Corp. v. Catrett,

3   477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

4       "If the moving party meets its initial burden of showing 'the

5   absence of a material and triable issue of fact,' 'the burden then

6   moves to the opposing party, who must present significant probative

7   evidence tending to support its claim or defense.'" Intel Corp. v.

8   Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

9   (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

10  Cir. 1987)).  The nonmoving party must go beyond the pleadings and

11  designate facts showing an issue for trial. Celotex, 477 U.S. at

12  322-23.

13      The substantive law governing a claim determines whether a

14  fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors

15  Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

16  to the existence of a genuine issue of fact must be resolved

17  against the moving party.  Matsushita Elec. Indus. Co. v. Zenith

18  Radio, 475 U.S. 574, 587 (1986).  The court should view inferences

19  drawn from the facts in the light most favorable to the nonmoving

20  party. T.W. Elec. Serv., 809 F.2d at 630-31.

21      If the factual context makes the nonmoving party's claim as to

22  the existence of a material issue of fact implausible, that party

23  must come forward with more persuasive evidence to support his

24  claim than would otherwise be necessary. Id.; In re Agricultural

25  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

26  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

27  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

28  / / /

4 - OPINION & ORDER

1                              DISCUSSION

2        In his Second Amended Complaint[1], plaintiff brings the

3    following claims:

4        (1) negligence against the County (First Claim for Relief -

5    Count One);

6        (2) negligence against the State (First Claim for Relief -

7    Count Two);

8        (3) false imprisonment against the State (Second Claim for

9    Relief - Count One);

10       (4) false imprisonment against the County (Second Claim for

11   Relief - Count Two);

12       (5) a 42 U.S.C. § 1983 claim against Ross alleging an equal

13   protection violation for failing to include plaintiff's time in

14   work release but including work release time of other inmates

15   (Third Claim for Relief - Count One);

16       (6) a section 1983 claim against Wehr for the same alleged

17   equal protection violation (Third Claim for Relief - Count Two);

18       (7) a section 1983 equal protection claim against the County

19   for maintaining a policy or practice of crediting some inmates for

20   credit for time served while in work release, while at the same

21   time denying that credit for other inmates (Third Claim for Relief

22   - Count Three);

23       (8) a section 1983 claim against the County for an alleged

24   _____

25       [1]   The operative pleading at the time the summary judgment
     motions were filed was the First Amended Complaint.  However,
26   with the written consent of the parties, plaintiff filed a Second
     Amended Complaint on July 25, 2008 (#61, #62), and further filed
27   a written consent to allow the Court to treat the summary
     judgment motions as having been filed against the Second Amended
28   Complaint (#63).

5 - OPINION & ORDER

deprivation of liberty based on the County's alleged policy or practice of not crediting an inmate on a Statement of Imprisonment, for time served in a county work release center (Third Claim for Relief - Count Four);

(9) a section 1983 claim against Ross for an alleged deprivation of liberty caused when she removed the time spent on work release from plaintiff's Statement of Imprisonment (Third claim for Relief - Count Five); and

(10) a section 1983 claim against Wehr for a deprivation of liberty for failure to credit plaintiff for time served while on work release (Third Claim for Relief - Count Six).

The claims rise and fall on the interpretation of Oregon Revised Statute § (O.R.S.) 137.370, governing the computation of the term of imprisonment in a state correctional institution. The statute provides, in pertinent part:

> (1) When a person is sentenced to imprisonment in the custody of the Department of Corrections, the term of confinement therein commences from the day the person is delivered to the custody of an officer of the Department of Corrections for the purpose of serving the sentence executed, regardless of whether the sentence is to be served in a state or federal institution.

> (2) Except as provided in subsections (3) and (4) of this section, when a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:

> (a) The time that the person is confined by any authority after the arrest for the crime for which sentence is imposed; and

> (b) The time that the person is authorized by the Department of Corrections to spend outside a confinement facility, in a program conducted by or for the Department of Corrections.

O.R.S. 137.370.

6 - OPINION & ORDER

1    In Curtiss v. Department of Corrections, 212 Or. App. 42, 157

2  P.3d 279 (2007), the plaintiff argued that Oregon Administrative

3  Rule (OAR) 291-100-0080(3)(g)[2], which provides that time-served

4  credit would not apply to time spent on house arrest, conflicted

5  with O.R.S. 137.370.  Given the nature of the plaintiff's argument,

6  the Oregon Court of Appeals was presented with the opportunity to

7  construe the term "confined" in O.R.S. 137.370(2)(a).

8    The state argued that the word "confined" was used in a narrow

9

10    [2] OAR 291-100-0080(3), the rule at issue in Curtiss, states:

11    (3) Pursuant to ORS 137.320(3) and 137.370:

12    (a) An inmate will receive time served credit only for
13    the actual number of days confined after arrest in a
      county jail or other non-Department of Corrections
14    facility (as authorized by statute) as a result of the
      charge or of the conduct which gave rise to the charge
15    for which the sentence is later imposed.  Credit will
      be given only for the presentence time the inmate was
16    confined in the county jail or other non-Department of
      Corrections facility (as authorized by statute).  The
17    days must be certified by the county sheriff or other
      qualified certifying authority, or if the time served
18    certification is erroneous (for example days certified
      when the inmate was not actually confined in that
19    county's jail), as can be verified.

20    * * *

21
22    (g) An inmate will not receive time served credit for
      time not confined in the county jail, such as time
23    spent on house arrest, electronic monitoring, or in a
      county work release program.
24

25  OAR 291-100-0080(3).

26    Notably, the parties in the instant case agree that this
    rule does not apply in this case because it was not in effect
27  when plaintiff committed the underlying crime.  They further
    agree that the issue here concerns the interpretation of O.R.S.
28  137.370, not the interpretation of an administrative rule.

7 - OPINION & ORDER

1  sense, meaning "imprisoned."  The plaintiff argued that a person
2  need not be imprisoned to be confined, that is, that a person who
3  agreed to limit his or her location may, under a broad reading of
4  the  definition  of  "confined,"  be  "confined,"  "albeit  self-
5  confined."  Id. at 46, 157 P.3d at 281.  The plaintiff also argued
6  that Oregon courts had consistently held that when incarcerated
7  persons are lawfully outside of their correctional facilities, they
8  are  still  "confined"  there  for  purposes  of  the  escape  statutes.
9  Id. at 47, 157 P.3d at 281.

10    The court held in favor of the state, "primarily based on the
11  statutes that provide context for ORS 137.370(2)(a)[.]"  Id.  The
12  court concluded that "confined," as used in O.R.S. 137.370(2)(a)
13  "equates with 'imprisoned,' and does not encompass a situation in
14  which a person voluntarily agrees to restrict his or her location."
15  Id.  The court also rejected the plaintiff's reading of earlier
16  Oregon cases and explained that Oregon cases have held that "a
17  person who is on "home detention" pretrial release cannot, in fact,
18  be convicted of escape for failing to comply with the conditions of
19  the release."  Id.

20    The court began its discussion by discussing the "statutory
21  context" for the "confined by any authority" provision of O.R.S.
22  137.370(2)(a).  The court first cited O.R.S. 137.370(1) which, it
23  described,  as  a  general  matter  indicates  that  when  a  person  is
24  sentenced  to  imprisonment  in  the  ODOC's  custody,  the  "term  of
25  confinement" begins when the ODOC takes custody.  Id.  The court
26  then noted that O.R.S. 137.370(2) instructs the ODOC on how to
27  compute the "term of confinement."  Id.  Additionally, paragraph
28  (2)(b)  includes,  within  the  "term  of  confinement,"  time  that  a

8 - OPINION & ORDER

1  person is authorized by the ODOC "to spend outside a confinement
2  facility, in a program conducted by or for" the ODOC.  Id.  Thus,
3  the court explained, paragraph (2)(b) "pertains to calculation of
4  the 'term of confinement' while a person is in DOC's custody." Id.

5      In contrast, the court noted, paragraph (2)(a) "applies more
6  broadly to time that the person is confined 'by any authority'
7  after the arrest for the crime for which the sentence is imposed."
8  Id.  Because, the court stated, "paragraph (2)(a) clearly
9  contemplates DOC calculating a 'term of confinement' to include
10 time that a person is 'confined' before being delivered to DOC's
11 custody for service of the sentence," the court turned to O.R.S.
12 137.320 as it concerns the delivery of convicted defendants to the
13 custody of the ODOC for service of their sentences.  Id. at 47-48,
14 157 P.3d at 282.

15     The court then discussed that O.R.S. 137.320(1) and (2)
16 "expressly direct sheriffs to report to DOC the number of days a
17 person has been 'imprisoned' prior to delivery to DOC's custody."
18 Id. at 48, 157 P.3d at 282.  Subsection (3), the court noted,
19 "instructs DOC, upon receipt of that information, to compute the
20 defendant's sentence in accordance with ORS 137.370." Id. at 48-
21 49, 157 P.3d at 282.  The court then stated:  "Those two statutes,
22 in conjunction [referring to O.R.S. 137.320 and O.R.S. 137.370]
23 indicate that DOC is to use information provided by the sheriff
24 about 'the number of days the defendant was imprisoned, ORS
25 137.320(1), (2) (emphasis added), to establish the 'term of
26 confinement," ORS 137.370(2) (emphasis added)." Id. at 49, 157
27 P.3d at 282.

28     Finally, the court disposed of the plaintiff's "escape"
9 - OPINION & ORDER

argument.    The   plaintiff   argued   that   persons   outside   of
correctional  facilities  can  be  prosecuted  for  escape  crimes  and
thus,  persons  outside  of  correctional  facilities  on  conditional
release  should  be  deemed  to  be  "confined"  for  purposes  of  O.R.S.
137.370(2).   <u>Id.</u> at 49, 157 P.3d at 283.

The  court  first  noted  that  the  argument  was  "inapt"  because
the  escape  statutes  do  not  use  the  term  "confined."  <u>Id.</u> at 50, 157
P.3d at 283.  Rather, the crime of "escape" involves the "'unlawful
departure  of  a  person  from  <u>custody</u>  or  a  correctional  facility.'"
<u>Id.</u>  (quoting  O.R.S.  162.135(5),  emphasis  added  in  <u>Curtiss</u>).
Further,  the  court  noted,  "'escape'  expressly  'does  <u>not</u>  include
failure  to  comply  with  provisions  of  a  conditional  release'
agreement."   <u>Id.</u>  (quoting  O.R.S.  162.135(5),  emphasis  added  in
<u>Curtiss</u>).  Thus, the court explained

> although petitioner is correct that persons outside of
> correctional facilities can, in some circumstances, be
> prosecuted for escape crimes, he is incorrect that
> persons on pretrial conditional release pursuant to ORS
> 135.230 to 135.290 can be successfully prosecuted for
> escape crimes by failing to abide by the conditions of
> their release. . . . Petitioner's contextual resort to
> the law of escape is unavailing.

<u>Id.</u> (citation and footnote omitted).

In  the  end,  the  <u>Curtiss</u>  court  concluded  that  the  term
"'confined,'  in  O.R.S.  137.370(2)(a)  means  incarcerated  and  does
not  encompass  pretrial  conditional  release,  including  home
detention."  <u>Id.</u>  Thus, it upheld Oregon Administrative Rule (OAR)
291-100-0080(3)  which,  in  addressing  credit  for  time  served,
specifically excludes "credit for time not confined in the county
jail, such as time spent on house arrest[.]"  <u>Id.</u> at 50, 157 P.3d
at 283.

10 - OPINION & ORDER

1    Defendants argue that under O.R.S. 137.370(2)(a) and <u>Curtiss</u>,
2    plaintiff was not "confined" when he participated in his work
3    release program and thus, it is appropriate that he not be given
4    credit for that time.  Defendants suggest that under <u>Curtiss</u>, the
5    essence of confinement is physical restraint to a location.  They
6    argue that time spent in a county work release center does not
7    qualify as credit for time served because it is not incarceration
8    or imprisonment.

9    In his Second Amended Complaint, plaintiff's own allegations
10   demonstrate that he was not confined to the work release center
11   twenty-four hours per day, seven days per week.  Second Am. Compl.
12   at ¶ 6 (plaintiff worked for approximately eight hours per day, six
13   days per week, and was confined during the remaining 120 hours of
14   each week).

15   Moreover, in his response memorandum, plaintiff concedes that
16   "[g]ranted, an inmate on work release is not confined when he is
17   working - at least not in the same sense that one is confined in a
18   jail or in a restitution center."  Pltf's Resp. at p. 6.  He
19   continues by noting that "during work hours . . . [h]e is
20   restricted to just going to and from work[,] . . . in the end, <u>work</u>
21   <u>release is arguably a hybrid:  it is part confinement and part less</u>
22   <u>so</u>."  <u>Id.</u> (emphasis added).

23   In a "Statement Under Penalty of Perjury," plaintiff makes
24   clear that when he was not at work, he was not housed in the County
25   jail, but in a separate "Restitution Center" in downtown Portland.
26   Pltf's Stmt. at ¶ 3.  He describes the center as run by the MCSO,
27   staffed by two uniformed guards, twenty-four hours each day.  <u>Id.</u>
28   He does not say that they were armed.  There was a mandatory 10 pm

1  bedtime.   The windows were alarmed to alert the guards if opened
2  more than six inches.  Id.  The exit doors were locked, except for
3  the front, which may have been locked at night.   Id.   The exit
4  doors were alarmed and there were video cameras around the outside
5  of the building.   Id.

6      There were classes or groups in the evenings, such as
7  Narcotics Anonymous, Alcoholics Anonymous, Anger Management and
8  others.   Id.   There were counselors and inmates had to obtain a
9  counselor's permission to accept a particular job if not already
10 employed when entering the work release program.   Id.

11     If not working, one was not free to leave the Restitution
12 Center.  Id. at ¶ 4.  Plaintiff had to sign in and sign out to go
13 to work.  Id.  He was pat searched upon returning from work each
14 day.  Id.  He was told that if he failed to timely return from
15 work, he would be charged with the crime of escape.  Id.

16     If not employed outside the Restitution Center, an inmate was
17 required to work at jobs inside the Center.  Id. at ¶ 5.  It was a
18 male only facility.  Id.

19     Given the construction of the statute in Curtiss, I agree with
20 defendants that the time plaintiff spent in the Restitution Center
21 was not "imprisonment" for the purposes of O.R.S. 137.370, and
22 thus, defendants appropriately refused to credit plaintiff for the
23 days he spent there.  While certainly there are more hallmarks of
24 imprisonment in the work release Restitution Center than the
25 plaintiff in Curtiss faced in home detention, other notable
26 hallmarks of imprisonment are absent in the work release setting,
27 most notably the fact that imprisonment is not for a twenty-four
28 hour period.   Additionally, a work release defendant has the

12 - OPINION & ORDER

ability to maintain, or gain, employment at a paid job in the regular community, and there is no corrections or sheriff department supervision during work hours, supplying the "freedom," so to speak, to fail to return from work each day.

None of plaintiff's arguments is persuasive. First, none of the four cases cited by plaintiff offers the kind of in-depth analysis of the controlling statute as found in <u>Curtiss</u>. In <u>Plumb v. Prinslow</u>, 847 F. Supp. 1509 (D. Or. 1994), the plaintiff brought an action alleging that county and state officials had delayed in crediting his sentence for eight-three days served in the county jail, resulting in his being wrongly imprisoned after the date on which he should have been released from custody.

In a footnote, Judge Panner explained that during litigation, the defendants maintained that the certification was erroneous and that the plaintiff should have been credited with only forty-eight days, on the basis that thirty-five days spent at a work center should not be credited as time served. <u>Id.</u> at 1515 n.2. Judge Panner concluded that the plaintiff had a liberty interest in credits for time served based on at least the forty-eight days that the plaintiff was at the county jail. <u>Id.</u> at 1518. But, Judge Panner left unresolved the dispute about the actual number of days the plaintiff should be credited because it was irrelevant to the legal issue on summary judgment which was whether there was a liberty interest. <u>Id.</u> at 1515 n.2. Later in the opinion, Judge Panner concluded that the state defendants were entitled to qualified immunity. <u>Id.</u> at 1522. There is no later opinion resolving the claims as to the county defendants. Thus, there was no determination in <u>Prinslow</u> that time spent on work release is to

13 - OPINION & ORDER

1  be credited by the ODOC as credit for previous confinement under
2  O.R.S. 137.370.

3       State v. Johnston, 176 Or. App. 418, 31 P.3d 1101 (2001) is
4  not applicable because the central issue in that case was whether
5  costs of confinement could be assessed by the sentencing court as
6  a general condition of probation.  The trial judge had ordered the
7  defendant, who was convicted of criminal nonsupport and felony
8  failure to appear, to probation and further ordered that he serve
9  sixty days in the county jail as a condition of probation, with
10  credit for time served.  Finally, the trial court ordered, as a
11  special condition of probation, that the defendant pay a per diem
12  of $39.75 for each day served in the county jail.  The defendant
13  appealed, arguing that the trial court lacked authority to order
14  him to pay the described amount as a special condition of
15  probation.

16       The appellate court focused on the authority provided by
17  O.R.S. 169.151, and O.R.S. 137.540(1) and (2), none of which are at
18  issue in the instant case.  Id. at 420-21, 31 P.3d at 1102.  The
19  court determined that the fee assessed by the trial court was
20  initially permitted by O.R.S. 137.540(1)(a).  Id. at 1104, 31 P.3d
21  at 423.  It then cited other statutes in support of its conclusion.
22  Id.  As part of its discussion, the court noted that O.R.S. 137.520
23  expressly authorized a court to order one subcategory of offender
24  (offenders sentenced to probation, ordered to serve time in the
25  county jail as a condition of probation, and placed on work
26  release), to pay at least one category of cost (board) incurred by
27  a county jail on behalf of the offender.  Id. at 424-25, 31 P.3d at
28  1104-05.  In this discussion, the court noted that the work release

14 - OPINION & ORDER

statute, O.R.S. 137.520, generally provided that an offender placed on work release is confined in the jail during the hours in which the offender is not employed.  Id. at 424, 31 P.3d at 1104.

In contrast, plaintiff in the instant case was not confined in jail during his non-work hours while on work release but rather, in the less restrictive Restitution Center.  More notably, Johnston never interpreted O.R.S. 137.370(2)(a) regarding whether time spent on work release should be credited toward a defendant's sentence. Thus, the case provides no authority for plaintiff's conclusion.

Next, plaintiff relies on two 1988 cases regarding escapes made by a work release defendant.  In State v. Ratliff, 89 Or. App. 483, 749 P.2d 616 (1988), an inmate was considered to have been constructively confined at the Multnomah County Correctional Facility during the time when he had been released from actual physical custody there and told to report to a work release center, to which he never reported.  Thus, under the escape statute criminalizing escape from "custody" or from a "correctional facility," he was considered to have been confined or incarcerated in a correctional facility and his actions constituted an unlawful departure from a correctional facility within the meaning of the escape statute.

In State v. Scott, 94 Or. App. 250, 764 P.2d 976, the court cited Ratliff and held that the defendant who fled while being transported to a work release facility, was under the county's constructive custody and thus, could be charged with escape from a correctional facility.

The problem with plaintiff's reliance on these cases is that neither case construed O.R.S. 137.370(2)(a).  Rather, both were

15 - OPINION & ORDER

1   concerned with the escape statutes, and whether there had been an
2   escape from "custody" or from a "correctional facility."    By
3   concluding that the defendant in each case was, in the particular
4   circumstances described, in the constructive custody of the
5   correctional facility, the issue was resolved in favor of the state
6   in each case.

7       As the Curtiss court noted, Ratliff is "no longer good law" in
8   light of a 1989 amendment to the escape statutes. Curtiss, 212 Or.
9   App. 42, 50 n.1, 157 P.2d at 283 n.1. Additionally, as the Curtiss
10  court explained, the "escape statutes do not use the term
11  'confined.'"    Id.    Thus, the "escape" argument in Curtiss was
12  "inapt." Id. It is equally inapt here.

13      Second, plaintiff argues that O.R.S. 137.520 mandates that
14  while on work release, plaintiff was to be housed at the county
15  jail when not actually at work and thus, in determining whether
16  plaintiff is to receive credit for time while on work release, the
17  court should consider him housed at the county jail while not
18  working instead of at the Restitution Center. As such, plaintiff
19  continues, he was confined under O.R.S. 137.370(2)(a).

20      There are two problems with this argument.    The statute
21  provides that a defendant placed on work release "shall, during the
22  hours in which not so . . . employed, be confined in the county
23  jail unless the court by order otherwise directs or unless the
24  sheriff otherwise directs in the absence of a contrary order by the
25  court.." O.R.S. 137.520(4) (emphasis added). The emphasized
26  language makes clear that the statute does not require all work
27  release defendants to be housed at the county jail when not
28  working. Thus, it would be inconsistent with the statute to ignore

16 - OPINION & ORDER

1   that plaintiff was housed at the Restitution Center in his off-work

2   hours and consider him housed at the jail.  The other problem with

3   this argument is that even if plaintiff were at the jail during

4   non-work hours, he still would have experienced a "hybrid"

5   situation because he was not incarcerated twenty-four hours per

6   day.

7        Third, plaintiff contends that a now superseded Oregon

8   Administrative Rule (OAR), OAR 291-100-013, which he contends was

9   effective at the time he committed his underlying crime, provides

10  for credit for time served in a county jail or other confinement

11  facility "on a day-for-day basis."  This, plaintiff argues,

12  supports his contention that credit be given for time spent in work

13  release.  I disagree.  Even if the rule were applicable, it is

14  easily understood as recognizing that when credit is determined to

15  apply, it is applied on a day-for-day basis.  The reference to

16  "day-for-day" adds no meaning to the initial determination of

17  whether credit is appropriately applied in the first instance.

18       Accordingly, I reject plaintiff's argument that credit given

19  for time "confined," as that word is used in O.R.S. 137.370, and as

20  having been interpreted in Curtiss to mean imprisoned, encompasses

21  time spent in the work release program at the Restitution Center.

22  With this conclusion, I need not further discuss plaintiff's

23  negligence and false imprisonment tort claims against the county

24  and the state, nor any of plaintiff's section 1983 claims based on

25  a deprivation of liberty.  The county and state employees

26  appropriately followed the law in denying credit for time served

27  for work release and thus, were not negligent, did not falsely

28  imprison plaintiff, and did not unconstitutionally deprive him of

17 - OPINION & ORDER

1  his liberty.

2      Plaintiff also brings several equal protection claims, for

3  allegedly failing to credit his work release time while crediting

4  the same time to the sentences of other inmates. Accepting for the

5  purposes of these motions that plaintiff could produce evidence

6  that defendants have credited other inmates for time spent in work

7  release, I nonetheless dismiss these claims.[3]

8      As the Supreme Court recognized in <u>Village of Willowbrook v.</u>

9  <u>Olech</u>, 528 U.S. 562 (2000), there are some limited circumstances

10  when an equal protection claim may be sustained, even if the

11  plaintiff has not alleged class-based discrimination but instead

12

13  _____

14  [3] After the summary judgment motions were taken under
    advisement, and long after the May 1, 2008 close of discovery,
15  plaintiff moved to reconsider the denial of an earlier motion to
    compel in which plaintiff information from the County regarding
    persons similarly situated to plaintiff. Through a request for
16  production and interrogatories, plaintiff sought the identities
    of persons who had served time in work release while serving a
17  sentence of probation which was subsequently revoked, and the
    person was then sent to prison. Plaintiff sought to learn how
18  the County, and then the State, treated these persons in terms of
    crediting or not crediting the time spent in work release. After
19  hearing oral argument on the motion to compel in a February 12,
    2008 hearing, I denied the motion.
20      Plaintiff fails to articulate any recognized grounds in
21  support of reconsideration of that decision. Generally, an
    intervening change in the controlling law, the availability of
22  new evidence, or the need to correct a clear error of law or
    prevent manifest injustice is required. <u>Transp. Credit Serv.</u>
23  <u>Ass'n v. Systran Fin. Servs. Corp.</u>, No. CV-03-1342-MO, 2004 WL
    1920799, at *1 (D. Or. Aug. 26, 2004) (citing <u>Medford Pac. v.</u>
24  <u>Danmor Constr.</u>, 2 F. Supp. 2d 1322, 1323 (D. Or. 1998)).
    Plaintiff raises none of these bases in support of the motion for
25  reconsideration.
26      More importantly, as discussed in this Opinion, even if
    plaintiff had such evidence, he cannot sustain his "class of one"
27  equal protection claim. The motion for reconsideration is
    denied.
28

18 - OPINION & ORDER

1    claims that he or she has been irrationally singled out as a "class
2    of one." Id. at 564-65.   As the Ninth Circuit explained, where
3    "state action does not implicate a fundamental right or a suspect
4    classification, the plaintiff can establish a 'class of one' equal
5    protection claim by demonstrating that it 'has been intentionally
6    treated differently from others similarly situated and that there
7    is no rational basis for the difference in treatment.'"   Squaw
8    Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004),
9    overruled on other grounds, Action Apt. Ass'n v. Santa Monica Rent
10   Control Bd., 509 F.3d 1020, 1025 (9th Cir. 2007) (quoting Village
11   of Willowbrook, 528 U.S. at 564).

12        Additionally, "[i]n order to claim a violation of equal
13   protection in a class of one case, the plaintiff must establish
14   that the [defendant] intentionally, and without rational basis,
15   treated the plaintiff differently from others similarly situated."
16   North Pacifica, LLC v. City of Pacifica, 526 F.3d 478, 486 (9th
17   Cir. 2008).   "A class of one plaintiff must show that the
18   discriminatory treatment was intentionally directed just at him, as
19   opposed to being an accident or a random act."   Id. (internal
20   quotation and ellipsis omitted).

21        Here, plaintiff makes no allegation implicating a suspect
22   classification.   In his Second Amended Complaint, he makes no
23   assertion of a fundamental right.   He proffers no evidence that any
24   discriminatory treatment was "intentionally directed just at him"
25   as opposed to the defendants making an occasional error, just as
26   they did in the first Statement of Imprisonment tendered by the
27   MCSO to the ODOC.   "Selective enforcement of valid laws, without
28   more, does not make the defendants' actions irrational[.]"   Freeman

19 - OPINION & ORDER

1  v. City of Santa Ana, 68 F.3d 1180, 1188 (9th Cir. 1995).

2  Accordingly, plaintiff's equal protection claims are dismissed.

3                          CONCLUSION

4      Defendants' motions for summary judgment (#37, #43) are

5  granted.  Plaintiff's motion for reconsideration of the denial of

6  the motion to compel (#66), is denied.

7      IT IS SO ORDERED.

8                  Dated this  10th  day of  September  , 2008.

9

10

11                            /s/ Dennis James Hubel
                              Dennis James Hubel
12                            United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20 - OPINION & ORDER